**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Mark Hogue,

        Plaintiff,

v.

Commissioner of Social Security Administration,

        Defendant.

No. CV-25-00102-PHX-DJH

**ORDER**

Plaintiff Mark Hogue ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying his application for Title II disability benefits. (Doc. 1). Plaintiff filed his Opening Brief (Doc. 17), the Commissioner filed a Response (Doc. 23), and Plaintiff filed a Reply (Doc. 24). Upon review of the briefs and Administrative Record ("AR") the Court affirms the Administrative Law Judge's ("ALJ") August 21, 2023, decision (AR at 24–32).

## I.    Background

On January 27, 2021, Plaintiff filed for disability and disability insurance benefits, alleging a disability onset date of April 3, 2020. (*Id.* at 24). Plaintiff's past relevant work experience includes being a warehouse worker and forklift operator. (*Id.* at 33). He claims he is unable to work due to the following severe medical impairments: glenohumeral osteoarthritis and degenerative joint disease of the right shoulder. (*Id.* at 27). At the date of onset of disability, Plaintiff was 57 years old, and he had a high school education. (Doc. 17 at 4).

Plaintiff's claims were initially denied on June 30, 2021, and upon reconsideration on October 1, 2021.  (AR at 24).   After holding a hearing, the ALJ issued an unfavorable decision on August 21, 2023 (AR at 24–34) (the "August Decision").

## II.    The ALJ's Five Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments.   *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii).   If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement.  *See id.* § 416.920(a)(4)(iii).  If so, the claimant is considered disabled and benefits are awarded, ending the inquiry.  *See id*.  If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)–(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g).   If the ALJ determines no such work is available, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(v).

The ALJ's findings in the August Decision are as follows:

At step one, the ALJ found that Plaintiff met the insured status requirements of the

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[2] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

Act on March 31, 2023, and that he had not engaged in substantial gainful activity since his alleged onset date of January 27, 2021.  (AR at 26–27). At step two, the ALJ found Plaintiff had the following severe impairments: glenohumeral osteoarthritis and degenerative joint disease of the right shoulder.  (*Id.* at 27 (citing 20 C.F.R. 416.920(c)). At step three, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  (*Id.* at 29).

> At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") through his date last insured to perform medium work and that he was able to "lift and/or carry 25 pounds up to 2/3 of an 8-hour workday and 50 pounds up to 1/3 of an 8-hour workday; he could stand and/or walk for 6 hours during an 8-hour workday; he could sit for 6 hours during an 8-hour workday; he was able to use his right upper extremity for reaching in any direction or pushing/pulling on a frequent basis; he could climb ladders, ropes or scaffolds up to 1/3 of 8-hour workday and perform all other postural activities without limits; and he could be exposed to hazardous conditions on an occasional basis." (*Id.* at 29–30). In determining Plaintiff's RFC, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 § C.F.R. 404.1529 and [Social Security Ruling] 16-3p."

(*Id.*) The ALJ also considered the opinions and prior administrative findings in accordance with the requirements of 20 C.F.R. § 404.1520c.  (*Id.*)  Given his RFC assessment, the ALJ determined that Plaintiff was capable of performing past relevant work as a warehouse worker and forklift operator.  (*Id.* at 33). The ALJ therefore did not reach step five and deemed Plaintiff not disabled from January 27, 2021, the amended alleged onset date, through March 31, 2023, the last date insured.  (*Id.* at 34 (citing 20 C.F.R. § 404.1520(f)).

The SSA Appeals Council denied Plaintiff's request for review of the August Decision, thus adopting the Decisions as the agency's final decision.  (*Id.* at 1–3). This appeal followed.   On January 13, 2025, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g),  1383(c)(3)  requesting judicial review  and  reversal  of  the

- 3 -

Commissioner's decision. (Doc. 1).

## III. Standard of Review

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate nondisability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.    Discussion**

Plaintiff appeals the ALJ's decision rendering him not disabled from January 27, 2021, through March 31, 2023. Plaintiff argues that the ALJ's decision should be appealed for two reasons. First, because the ALJ failed to articulate clear and convincing reasons to discount Plaintiff's subjective symptom testimony and second, that the ALJ failed to articulate the supportability and consistency of Dr. Gordon's medical opinion. (Doc. 17 at 7–14). The Commissioner disagrees, arguing that the ALJ did indeed articulate clear and convincing reasons to discount Plaintiff's subjective testimony. (Doc. 24 at 1–2). And, the Commissioner argues, the ALJ adequately discussed the supportability and consistency of Dr. Gordon's opinions. (Doc. 23 at 8–11).

The Court will set forth the applicable legal standards before turning to each of Plaintiff's arguments.

**A.    Legal Standards**

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–1036 (9th Cir. 2007). First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' " *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the

ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id*. at 1015; *Brown-Hunter*, 806 F.3d at 488–89. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "The standard isn't whether [the reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following:

(1)     ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

(2)     unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

(3)     the claimant's daily activities.

*Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

**B.  Plaintiff's Symptom Testimony**

At issue is Plaintiff's testimony that he suffers from occasional reaching with the right upper extremity. (Doc. 17 at 8). The ALJ summarized Plaintiff's relevant symptom testimony as follows:

> He stated that he could comfortably lift and carry up to 25 pounds, before having his surgery on his right shoulder and

that he could do that off and on for 2 hours in an 8-hour workday. He stated that due to his right shoulder impairment, he could not reach his right arm above shoulder height. He stated that he could use his right hand for activities such as grasping, writing, and typing for only about 1 to 1.5 hours at a time. He stated that during a typical 8-hour day during the relevant period, he spent approximately 4-5 hours lying down due to chronic pain.

(AR at 69).  At the first step of the symptom testimony analysis, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) However, at the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*) The ALJ particularly took issue with the extent of Plaintiff's limitations for his shoulder impairment.  (*Id.* at 31).

Plaintiff argues that his testimony described greater limitations than those reflected in the ALJ's RFC, and that the ALJ erred in discounting his testimony based on inconsistencies in the medical record and his daily activities.

## C.  Objective Medical Records

The Court first addresses the ALJ's discussion of objective medical records.  The ALJ relied on imaging from March 2020 and noted that while it showed moderate-advanced degenerative change, of the glenohumeral joint, the acromioclavicular joint still maintained a normal appearance.  (AR at 31).  The ALJ continued that during a treatment note in 2022, Plaintiff did not complain of any shoulder pain.  (*Id.*)  Referencing his most recent scan before his date last insured, the ALJ also noted that while it showed that Plaintiff had advanced glenohumeral osteoarthritis, this was balanced by the findings in the  examination of Dr. Robert Gordon ("Dr. Gordon"). (*Id.*)  The Commissioner argues that the ALJ adequately identified areas in the medical record that were inconsistent with Plaintiff's testimony.  (Doc. 23 at 5).  The Court agrees.

## D.  Daily Activities

The Court will now turn to the ALJ's discussion of Plaintiff's daily activities. A

plaintiff's ability to carry out "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (internal quotations and citations omitted). "The ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681(9th Cir. 2005)). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when the plaintiff's described activities contradict his other testimony; and (2) when the plaintiff's activities "meet the threshold for transferable work skills." *Id.* (citing *Fair*, 885 F.2d at 603); *see also Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

The ALJ summarized Plaintiff's activities as follows: "Further, the claimant testified at the hearing that prior to his shoulder surgery, which occurred after the date last insured, he was able to help with household chores such as cleaning the stove and helping in the kitchen." (AR at 32). The ALJ noted that this was before the surgery on his right shoulder, which occurred after the last date insured. (*Id.*) While the ALJ did not provide reasoning as to why being able to clean the stove and help in the kitchen are related to transferrable work skills, the Court finds that this is harmless error. *See Molina*, 674 F.3d at 1115 (An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate no disability determination)

### 1. Supportability and Consistency of Dr. Gordon's Opinions

Lastly, Plaintiff argues that the ALJ erred by finding the opinion of Dr. Gordon less persuasive with the medical record as a whole. (Doc. 17 at 13). The Commissioner counters by arguing that the ALJ properly assessed the medical opinions of Dr. Gordon and specifically pointed to instances where Dr. Gordon's opinion conflicted with the entirety of the medical record. (Doc. 23 at 10–11).

Because Plaintiff's application for SSI benefits at issue occurred after March 27, 2017, she is subject to the new regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

> *Id*. § 416.920c.[3] The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. *Id*. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the recent changes to the SSA regulations displaced the former hierarchy of medical opinions. *Woods*, 32 F.4th at 787. The longstanding rule that assigned "presumptive weight based on the extent of the doctor's relationship with the claimant [] no longer applies." *Id*. An ALJ no longer needs to articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Id*. at 792. "Now, an ALJ's decision . . . to discredit *any* medical opinion, must simply be supported by substantial evidence." *Id*. at 787 (emphasis added).

However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id*. at 792. Instead, "[t]he agency must articulate how persuasive it finds all the medical opinions from each doctor or other

---

[3] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

Here, the ALJ parsed between the parts of Dr. Gordon's opinion he found persuasive and those he did not. He started by noting the parts of Dr. Gordon's opinion that were consistent with the medical record as a whole. For example, he stated that Dr. Gordon's opinion about Plaintiff's ability to "lift, carry, stand, and walk are generally consistent with the claimant's normal strength in the bilateral upper and lower extremities." (AR at 33). Dr. Gordon's opinion about Plaintiff not being exposed to hazardous conditions given Plaintiff's shoulder condition, he also found consistent with the rest of the medical record. (*Id.*) When moving to where he found the opinion inconsistent and unsupported, he specifically pointed to the following:

> [T]hough his opinion regarding the claimant's ability to balance, stoop, kneel, crouch and crawl appears to be a bit excessive given the claimant's normal range of motion of the back, hips, knees, ankles, elbows, neck, wrists and hands. Accordingly, I find the claimant less limited in these postural activities. Dr. Gordon's opinion that the claimant could reach (overhead and otherwise) only occasionally bilaterally is unpersuasive as it appears based mostly on the claimant's subjective reports of pain and it is inconsistent with the claimant's full (5/5) strength in the bilateral upper extremities, as well as his normal bilateral shoulder examination (See B4F/4). While the claimant expressed subjective pain in the bilateral shoulders and limited range of motion in the bilateral shoulders based on his subjective pain, the claimant later clarified at the hearing that his left shoulder was only occasionally painful. There also is no laboratory findings establishing a medically determinable impairment related to his left shoulder. Thus, I find the overall evidence does not support any reaching, pushing/pulling limitations regarding the left shoulder. Regarding the right shoulder, I find that the overall evidence prior to the date last insured is more consistent with the ability to reach in any direction with the right arm, as well as push/pull with the right arm on a frequent basis. This is supported by his full strength in the

bilateral upper extremities (see B4F/4), his normal shoulder examination at B4F/4, as well as the fact that he was not referred for surgical intervention until after the date last insured.

(AR at 33).   The Court finds that there is substantial evidence to support the ALJ's decision to disregard Dr. Gordon's assessment, in the parts that he did, under the supportability and consistency factors.   The ALJ reasonably found that Dr. Gordon's assessment of Plaintiff's mobility limitations in his right shoulder was unpersuasive because it mainly relied on Plaintiff's subjective complaints about his lack of mobility and was undermined by the rest of the medical evidence. 20 C.F.R. § 404.1520c(c)(1)).

**V.      Conclusion**

The ALJ sufficiently conveyed his reasons for rejecting Plaintiff's symptom testimony.   Likewise, the ALJ sufficiently articulated why he disregarded Dr. Gordon's medical opinion.   Therefore, the ALJ's conclusion that Plaintiff was not disabled from his alleged onset date of January 27, 2022, through to March 31, 2023, is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that the Administrate Law Judge's August 21, 2023, decision is **affirmed.**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 30th day of March, 2026.

_____
Honorable Diane J. Humetewa
United States District Judge